In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-04-136 CR


____________________



ROBERT GLENN FULLER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 128th District Court


Orange County, Texas


Trial Cause No. A-030736-R






MEMORANDUM OPINION


 A jury convicted appellant Robert Glenn Fuller of burglary of a habitation. See
Tex. Pen. Code Ann. § 30.02(c)(2) (Vernon 2003). Fuller pled true to the indictment's
allegation of a prior conviction for felony theft, and the jury sentenced him to twenty-five
years of confinement. Fuller filed this appeal, in which he raises four issues for our
consideration. We affirm.


The Motion to Suppress


 Fuller's first issue asserts the trial court abused its discretion in denying his motion
to suppress his confession. We review the trial court's ruling on a motion to suppress for
abuse of discretion. Long v. State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991). If the
trial court's ruling is supported by the record, we will not overturn it on appeal. Brooks
v. State, 76 S.W.3d 426, 430 (Tex. App.--Houston [14th Dist.] 2002, no pet.). The trial
court is the sole judge of the weight and credibility of the evidence at a suppression
hearing. Wood v. State, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000). We afford almost
total deference to the trial court's determination of the historical facts that depend on
credibility and demeanor, but we review de novo the trial court's application of the law
to the facts if resolution of those ultimate questions does not turn on evaluation of
credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
 In his motion to suppress his confession, Fuller argued the confession was
involuntary because he was intoxicated and law enforcement officers threatened him. In
its findings of fact and conclusions of law, the trial court found that Fuller knowingly and
voluntarily waived his rights and his confession was voluntary. The trial court also found
that Fuller was not threatened. 


 At the hearing on his motion to suppress, Fuller testified that on the day he was
apprehended, he had been using crack cocaine for three to five days. Fuller testified, "I
don't sleep or eat when I'm on crack." Fuller also testified he had "no understanding of
nothing except for one thing, and that's the next hit." Fuller vaguely recalled being given
Miranda warnings twice, but stated he did not really understand them. Fuller denied any
memory of how the statement was written, but testified he recalled reviewing and signing
the statement. Fuller opined he was mentally impaired due to his drug use and lack of
sleep. 

 Fuller also testified that while he was being transported to the police station, a
Vinton police officer grabbed him, "tightened up on his rein" on his arm, and told him,
"Look, you better cooperate or we're going to whip your ass[.]" Fuller testified he
believed the alleged threat because "Louisiana is notorious." According to Fuller, he
believed he had to agree with the officer "whether it was true or not true." Fuller testified
that he gave the statement because he believed he would be harmed if he did not do so, and
the statement was not true. 

 Officer Danny Hodges with the Orange Police Department testified he took Fuller's
statement at the Vinton Police Department in Vinton, Louisiana. Officer Hodges was not
involved in the arrest of Fuller. Officer Hodges testified that Detective Longlois of the
Orange Police Department was also present when Fuller gave his statement. According
to Officer Hodges, Detective Longlois advised Fuller of his Texas Miranda rights, and
Detective Hodges advised Fuller of his Louisiana Miranda rights. Officer Hodges stated
he also advised Fuller of his right to an attorney, his right to remain silent, that anything
he said could be used against him, that he had the right to have an attorney present prior
to and during any questioning, and that he could terminate the interview at any time. 
Officer Hodges testified Fuller verbally acknowledged that he understood each of his
rights, and Fuller also wrote his initials next to each warning to indicate that he
understood. After Officer Hodges advised Fuller of his constitutional rights, Fuller agreed
to waive his rights and give a statement. Officer Hodges testified he prepared a written
statement for Fuller based upon what Fuller had told them, and Fuller signed the statement
after reviewing it. 

 Officer Hodges testified that Fuller had a reputation as a crack addict, but he did
not appear to be under the influence of narcotics or alcohol when he gave his statement.
Officer Hodges did not conduct any sobriety tests on Fuller. According to Officer Hodges,
intoxicated individuals often slur their speech and are unable to directly answer questions. 
He described Fuller as alert and able to quickly answer direct questions, sit up, maintain
his balance while walking, and speak clearly and directly. 


 Detective Longlois testified he participated in a criminal investigation of Fuller
involving a car pursuit. Detective Longlois testified the pursuit of Fuller terminated in
Vinton, Louisiana, and Fuller was taken into custody there. Detective Longlois was not
present when Fuller was arrested, and he did not participate in transporting Fuller to the
police station. After Fuller was taken into custody, Detective Longlois and Officer Hodges
met with Fuller in a room at the Vinton Police Department. According to Detective
Longlois, he advised Fuller of his constitutional rights before speaking with him. 
Detective Longlois also advised Fuller of his Texas Miranda rights. Detective Longlois
was present when Officer Hodges advised Fuller of his Louisiana Miranda rights. Fuller
indicated both verbally and in writing that he understood the rights of which he had been
advised, and he agreed to waive his constitutional rights after the first Miranda warning. 
 

 Detective Longlois testified that Fuller gave a written statement. Detective Longlois
was present when Officer Hodges wrote the statement. According to Detective Longlois,
Officer Hodges explained to Fuller that he could change the statement, but Fuller did not
request that any changes be made. Fuller signed the statement in Detective Longlois's
presence. 


 According to Detective Longlois, Fuller did not appear to be under the influence
of any narcotic drug or alcohol. Detective Longlois testified that he has had occasion to
interact with people who are under the influence of illegal drugs or alcohol. Detective
Longlois testified Fuller appeared normal, did not slur his speech, was able to sit or stand
upright, could answer questions directly, and his answers to questions were coherent.
Detective Longlois testified, "I watched [Fuller] walk. I watched him sit. I watched how
he behaved; and all of that seemed normal, not - - not under the influence of anything." 
Detective Longlois did not give Fuller any standard sobriety tests. Detective Longlois
knew Fuller was reputed to be a crack addict. 

 Trooper Ross McCain of the Louisiana State Police testified he transported Fuller
to the Vinton Police Department after Fuller was arrested at a residence in Vinton,
Louisiana. Trooper McCain did not recall speaking to Fuller during the ride to the Vinton
Police Department. Trooper McCain denied threatening Fuller, and he testified that Fuller
was lying when he said Trooper McCain threatened him. Trooper McCain also testified
that he has had the occasion to arrest persons who were under the influence of crack
cocaine. Trooper McCain testified Fuller did not slur his speech, complied with verbal
commands, and did not struggle or attempt to flee. According to Trooper McCain, his car
camera was on during the transport, but once Fuller was placed in the rear of the unit,
Trooper McCain turned the camera around to face Fuller. Therefore, Trooper McCain
believed that the events after Fuller was taken out of the car and into the police station
would not appear on the video. 

 Officer J.C. Stone of the Vinton Police Department testified he accompanied Fuller
to the Vinton Police Department. Officer Stone testified he arrived at the same time as
Trooper McCain, and he observed Trooper McCain taking Fuller out of the squad car and
walking up the ramp with him. Officer Stone also saw Trooper McCain taking Fuller into
the temporary police facility, which was a trailer. Officer Stone denied hearing Trooper
McCain make any threatening statements to Fuller. Officer Stone testified nothing led him
to believe the transportation of Fuller was anything other than routine. 

 Even if Fuller was intoxicated when he gave his statement, his statement was not
necessarily involuntary. See Nichols v. State, 754 S.W.2d 185,190 (Tex. Crim. App.
1988). Intoxication is relevant, but it is not determinative of voluntariness. Id. "The
central question is the extent to which appellant was deprived of his faculties due to the
intoxication." Id. If Fuller's intoxication rendered him incapable of making an
independent, informed choice of free will, then his confession was given involuntarily. 
Id. The trial court, as the finder of fact at the suppression hearing, could choose to believe
or disbelieve any or all of the testimony of the witnesses. Luckett v. State, 586 S.W.2d
524, 527 (Tex. Crim. App. 1979). The trial court was free to believe Officer Hodges and
Detective Longlois and to disbelieve Fuller regarding his alleged intoxication. See id. 

 "A statement is 'involuntary,' for the purposes of federal due process, only if there
was official, coercive conduct of such a nature that any statement obtained thereby was
unlikely to have been the product of an essentially free and unconstrained choice by its
maker." Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). The trial
court was free to disbelieve Fuller's testimony regarding his allegation of coercion and to
believe the testimony of Trooper McCain and Officer Stone. See id. Therefore, the trial
court did not abuse its discretion in denying Fuller's motion to suppress his statement. 
Issue one is overruled.

Assistance of Counsel


 In his second issue, Fuller asserts trial counsel was ineffective. To prevail on a
claim of ineffective assistance of counsel, an appellant must satisfy a two-pronged test:

 First, the defendant must show that counsel's performance was deficient. 
This requires showing that counsel made errors so serious that counsel was
not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment. Second, the defendant must show that the deficient
performance prejudiced the defense. This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial, a trial
whose result is reliable. 


Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 
See also Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Fuller must
demonstrate a reasonable probability that, but for his counsel's errors, the outcome would
have been different. See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 
"Appellate review of defense counsel's representation is highly deferential and presumes
that counsel's actions fell within the wide range of reasonable and professional assistance." 
Id. 

 Fuller must prove there was no plausible professional reason for specific acts or
omissions of his counsel. Id. at 836. Furthermore, "[a]ny allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness." Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)
(citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). The bare
record on direct appeal is usually insufficient to demonstrate "counsel's representation was
so deficient . . . as to overcome the presumption that counsel's conduct was reasonable and
professional." Bone, 77 S.W.3d at 833 (citation omitted). The mere fact that another
attorney might have tried the case differently does not support a finding of ineffective
assistance of counsel. Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983).

 Fuller argues his trial counsel was ineffective because he failed to subpoena
"numerous witnesses to prove his alibi for the time period that the burglary was alleged
to have occurred." Fuller was the sole witness at the hearing on his motion for new trial.
At the hearing, Fuller testified that he provided trial counsel with names, addresses, and
some phone numbers for various witnesses and asked that they be subpoenaed. Fuller
testified trial counsel tried eight times to contact one of the witnesses. "A claim of
ineffective assistance of counsel based on counsel's failure to call witnesses fails in the
absence of a showing that such witnesses were available to testify and that the defendant
would have benefitted from their testimony." Wade v. State, 164 S.W.3d 788, 796 (Tex.
App.--Houston [14th Dist.] 2005, no pet.) (citing Wilkerson v. State, 726 S.W.2d 542, 551
(Tex. Crim. App. 1986)). The record is silent as to why counsel did not call the witnesses
to testify at trial, and we do not presume that not calling the witnesses to testify constituted
ineffective assistance. See Thompson, 9 S.W.3d at 813; Bone, 77 S.W.3d at 833. Fuller's
second issue is overruled.

Sufficiency of the Evidence


 In his third issue, Fuller contends the evidence was legally and factually insufficient
to support his conviction. In reviewing issues of legal sufficiency, an appellate court views
the evidence in the light most favorable to the verdict to determine whether a rational fact
finder could have found each element of the offense beyond a reasonable doubt. 
Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). In Zuniga v. State, 144
S.W.3d 477, 484-85 (Tex. Crim. App. 2004), the Court of Criminal Appeals phrased the
standard for a factual sufficiency review as follows: 

 Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt? However, there are two
ways in which the evidence may be insufficient. First, when considered by
itself, evidence supporting the verdict may be too weak to support the
finding of guilt beyond a reasonable doubt. Second, there may be both
evidence supporting the verdict and evidence contrary to the verdict. 
Weighing all the evidence under this balancing scale, the contrary evidence
may be strong enough that the beyond-a-reasonable-doubt standard could not
have been met, so the guilty verdict should not stand. This standard
acknowledges that evidence of guilt can "preponderate" in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Stated another way, evidence supporting guilt can
"outweigh" the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard. 


An appellate court "must give due deference to the fact finder's determinations concerning
the weight and credibility of the evidence. . . ." Swearingen, 101 S.W.3d at 97. It is the
sole province of the jury to determine the credibility of witnesses and to weigh
contradictory testimony. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

 The complainant testified he is employed as a truck driver, and his job requires him
to be away from home for extended periods of time. Complainant left town for a job on
August 21, 2003. According to him, he left his house locked and secured, and he had not
given anyone except his mother and sister permission to enter his home. When he spoke
with his sister, he learned his house had been burglarized, so he returned home. When
complainant arrived at his home, he noticed that property had been taken and called the
police. After the investigating officer arrived, complainant gave a report. While the
officer was present, complainant saw someone riding one of his bicycles that had been
stolen. Complainant told the officer what he saw, and the officer subsequently recovered
the bicycle. 

 Officer Joseph Steele of the Orange Police Department testified he investigated the
burglary at complainant's residence. Upon arriving at the residence, he found that the
house had been burned, and complainant, who owned the residence, realized several items
were missing. Officer Steele did not find any fingerprints or any items identified as
Fuller's. Officer Steele found no evidence of forced entry. While Officer Steele was
obtaining information from complainant, complainant told him about some bicycles that
were taken. Complainant told Officer Steele that he saw someone riding down the street
on one of the missing bicycles. Officer Steele flagged down the individual on the bicycle,
and after determining that the bicycle belonged to complainant, he recovered it. 

 Officer Hodges testified that he met with Fuller at the Vinton Police Department
while investigating a burglary of a habitation. Detective Longlois was also present during
the meeting. According to Officer Hodges, he advised Fuller of his Louisiana Miranda
rights before speaking with him, and Detective Longlois read Fuller his Texas Miranda
rights. Officer Hodges testified that Fuller's written statement contains the constitutional
rights that he explained to Fuller. Fuller indicated that he understood his constitutional
rights. Officer Hodges testified Fuller answered questions clearly and succinctly, did not
slur his speech, walked unassisted, and gave no indication that he was under the influence
of alcohol or drugs. 

 After being advised of his constitutional rights, Fuller waived his rights and gave
a statement. Fuller's statement, which was admitted into evidence, provided as follows:

 I do not know [complainant]. I don't remember the date. I had been
walking around for days with no food or sleep. I went into the house . . .
through a window. I turned the window A/C unit on. I ate a half a gallon
of ice cream from the ice box. After that I fell asleep. I woke up and I took
a bicycle. I parked the bike around the corner. . . . I went back to get the
bike and it was gone. 


Officer Hodges described Fuller's mood during the statement as passive one minute, angry
and abusive the next. He described Fuller's appearance as calm "for the most part[,]" but
stated Fuller would become angry when he disagreed with something. 

 Officer Hodges testified he wrote Fuller's statement so it would be legible, and that
doing so is common practice. Officer Hodges testified that Fuller never requested an
attorney or asked that the interview cease. Officer Hodges denied coercing or threatening
Fuller, and he testified that Fuller never indicated he had been threatened by any other
officer. Officer Hodges also denied promising Fuller anything in exchange for the
statement. According to Officer Hodges, Fuller was not denied any basic necessities. 
Officer Hodges testified he gave Fuller the opportunity to review and correct the statement,
but Fuller did not request any changes, and then signed the statement. 

 Officer Hodges testified he has had several opportunities to interact with people who
are under the influence of alcohol, drugs, or narcotics, and he has also received special
training to recognize when someone is under the influence. Officer Hodges did not
perform any sobriety testing procedures on Fuller because he did not feel it was necessary
to do so. Officer Hodges testified he had never taken a statement from an intoxicated
person, and he would not have attempted to take the statement if he had thought Fuller was
intoxicated. 

 Detective Longlois testified that he met Fuller at the Vinton Police Department
while investigating a burglary. Detective Longlois advised Fuller of his constitutional
rights, including his Texas Miranda rights, before speaking with him. Fuller indicated
both verbally and in writing that he understood each of his rights. Fuller agreed to waive
his rights and gave a statement to Detective Hodges. Detective Longlois denied coercing
or threatening Fuller. He also denied promising Fuller anything in exchange for the
statement. Detective Longlois testified that he and Officer Hodges did not deny Fuller any
basic necessities. 

 Detective Longlois testified that he has had occasion to interact with people under
the influence of alcohol and drugs, so he is familiar with how they behave. He testified
that he did not see Fuller exhibit symptoms of intoxication. According to Detective
Longlois, Fuller did not slur his speech, and he answered questions intelligently and
succinctly. Detective Longlois testified, "I observed nothing to indicate that [Fuller]
would be under the influence[,]" and he described the taking of Fuller's statement as
"[v]ery routine." Detective Longlois did not perform any physical sobriety tests on Fuller. 
He described Fuller's demeanor as calm, and he testified that Fuller did not indicate he had
been threatened by anyone. 

 Fuller testified that he has been a drug addict since age eight. He testified he has
been a habitual user of crack cocaine since 1985, and he uses cocaine every day.
According to Fuller, he was arrested at a residence in Vinton, Louisiana, and transferred
to the Vinton Police Department. Fuller testified he was transferred to the Vinton Police
Department by a Louisiana officer whose identity was unknown to him. Fuller then
testified as follows:

 Upon reaching the Vinton Police Department where the officer pulled up in
front of the old station that was supposedly closed down, he come around to
the car and got me out . . ., and I started to go towards the front door there
and kind of bumped into him and when I did, he grabbed me by the arm and
he said we was going around the other way. . . . He told me that if I didn't
cooperate he was going to whip my ass. . . . 


Fuller testified that he believed the threat, and he was scared that someone would harm
him if he did not admit to the burglary. Fuller did not tell the officers questioning him that
he had been threatened. 

 Fuller also testified he was high on cocaine while the officers were questioning him. 
According to Fuller, he had not slept for more than three days. Fuller testified that "One
of the characters of cocaine is it messes with . . . your brain in a paranoia-type way. . .
. So . . . it affected me in a major way." Fuller testified that when he is high on cocaine,
he sometimes appears passive one minute and angry the next. When asked whether he
recalled reading, approving, and signing the statement, Fuller testified, "Kind of but not -
- it's like a fog." Fuller further testified that during the questioning, 

 I'm . . . trying to juggle the questions and understand what they're talking
about. I understood they read the Miranda rights. I understood that they .
. . were asking me to give a statement on myself. I, basically, understood
that; but not until I was back here in Texas and actually went to the law
library did I get a knowledge of what transpired there. 


Fuller stated he did not remember signing and approving the statement, but he admitted
the initials on the statement were his. 

 Fuller denied burglarizing complainant's home or selling complainant's bicycle. 
Fuller testified that he vaguely remembered what transpired during the week of the
burglary, and he stated he was "stuck in between a rock and a hard place as to producing"
as witnesses, people he had been with during that time. 

 Trooper Ross McCain of the Louisiana State Police testified he has had occasion to
interact with persons under the influence of drugs or alcohol, and is familiar with the
general demeanor of such individuals. Trooper McCain further testified he has dealt with
individuals alleged to have been under the influence of crack cocaine. According to
Trooper McCain, he transported Fuller from a residence in Vinton to the Vinton Police
Department. Trooper McCain opined that Fuller did not appear to be under the influence
of drugs or alcohol. Trooper McCain testified Fuller was not uncooperative or combative,
did not slur his speech, was able to walk unassisted, responded to verbal commands, and
offered succinct and responsive answers to questions he was asked. According to Trooper
McCain, nothing in his law enforcement experience led him to believe Fuller was not in
complete possession of his cognitive abilities. 

 Trooper McCain denied threatening Fuller with physical or emotional harm, and
he stated Fuller's testimony to the contrary was untrue. Trooper McCain testified his car
camera was on while he transported Fuller, but because he generally turns the camera
around to face subjects when he transports them, he did not believe the camera would have
recorded Fuller once he exited the car. 

 Viewing the record in the light most favorable to the verdict, a rational jury could
have concluded beyond a reasonable doubt that Fuller was guilty of burglary of a
habitation. See Tex. Pen. Code Ann. § 30.02(c)(2) (Vernon 2003). The evidence is
legally sufficient to support the verdict. Furthermore, considering all of the evidence in
a neutral light, the jury was rationally justified in finding Fuller guilty of burglary of a
habitation beyond a reasonable doubt. See id. The evidence supporting the verdict is not
too weak, nor is the contrary evidence, including the direct testimony of Fuller, so strong
that the burden of proof could not be met. The evidence is factually sufficient to support
the verdict. Fuller's third issue is overruled.

Denial of Motion for Continuance


 In his fourth issue, Fuller argues the trial court erred in denying his motion for
continuance, which was filed due to the unavailability of a witness. The decision whether
to grant or to deny a continuance is within the sound discretion of the trial court. Janecka
v. State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); see also Hernandez v. State, 643
S.W.2d 397, 399 (Tex. Crim. App. 1982). An appellate court may reverse the trial
court's decision only for abuse of discretion. Hernandez, 643 S.W.2d at 399. 

 To prevail, Fuller must demonstrate that he was prejudiced by inadequate time. See
Duhamel v. State, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986). The trial court was in the
best position to determine whether further delay was warranted under the circumstances. 
On this record, Fuller has not demonstrated that he was prejudiced by the denial of his
motion for continuance. Fuller's fourth issue is overruled. The judgment of the trial court
is affirmed.

 AFFIRMED. 


 ______________________________

 STEVE McKEITHEN 

 Chief Justice


Submitted on December 1, 2005

Opinion Delivered February 8, 2006

Do Not Publish 

Before McKeithen, C.J., Gaultney and Horton, JJ.